IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 20, 2021 Session

## IN RE LUCAS S.

**Appeal from the Circuit Court for Trousdale County**
**No. 2018-CV-4734 Clara W. Byrd, Judge**

_____

## No. M2019-01969-COA-R3-PT

_____

In this termination of parental rights case, Appellant/Mother appeals the trial court's termination of her parental rights to the minor child on the grounds of: (1) persistence of the conditions that led to the child's removal, Tenn. Code Ann. § 36-1-113(g)(3)(A); (2) abandonment by failure to visit, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(1); (3) abandonment by failure to support, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(1); and (4) failure to manifest a willingness and ability to assume custody of child, Tenn. Code Ann. § 36-1-113(g)(14). Mother also appeals the trial court's finding that termination of her parental rights is in the child's best interest, Tenn. Code Ann. § 36-1-113(i). Because Appellees did not plead the ground of persistence of conditions and because the threshold requirements for that ground are not met, we reverse the trial court's termination of Mother's parental rights on the ground of persistence of conditions. We affirm the trial court's termination of Mother's parental rights on all remaining grounds and on its finding that termination of Mother's parental rights is in the child's best interest.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN D. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Jacquelyn M. Scott, Carthage, Tennessee, for the appellant, Rachel C.[1]

Kara Everett Bellar and J. Branden Bellar, Carthage, Tennessee, for the appellees, Michael S. and Audrey S.

---

[1] In cases involving a minor child, it is the policy of this Court to redact the parties' names to protect their identities.

## OPINION

## I. Background

Appellant Rachel C. ("Mother") and Michael S. ("Father") are the biological parents of Lucas S. (d/o/b January 2004) (the "Child"). Mother and Father divorced in 2006, when Child was two years old, and Father was named as the Child's primary residential parent. Since the divorce, the Child has lived exclusively in Father's home. Mother was granted substantially equal parenting time, i.e., four days per week and alternate weekends. Although she initially exercised her visitation, in approximately 2009, Mother began to deviate from the schedule.

In 2013, Father and Audrey S. ("Stepmother," and together with Father, "Appellees") started a relationship; they married in November 2015. After the divorce from Father, Mother married twice more. In 2013, Mother moved to Colorado, where she graduated from the University of Colorado with a degree in science. In 2015, Mother moved to Kentucky, where her third husband was stationed at Fort Campbell. In August 2017, mother moved back to Tennessee. During the time she lived out of state, Mother had sporadic contact with the Child but no consistent visitation. In late 2015, after Father and Stepmother married, Mother's visitation stopped altogether.

Mother has a history of drug abuse and addiction. In her deposition, which was admitted into evidence, Mother conceded that she struggles with addiction. Although she claimed that she has been sober since 2016, she contradicted this statement by admitting that she used methamphetamine as late as October 2018.

The record evinces Mother's criminal history dating back to 2006. She has accrued criminal charges, including forgery (bad checks), identity theft, reckless endangerment, harassment, criminal impersonation, driving without a license, and possession of Xanax and methamphetamine.

Mother's employment has been sporadic. She has worked at a convenient store and as a dispatcher at a taxi company. However, from May 2017 until April 2019, Mother was unemployed. At the time of her deposition, Mother was employed by an auto parts manufacturing company in the shipping department. Mother testified that she has a nursing license, which has expired due to her lack of funds to pay for renewal. Mother testified that she has been diagnosed with Lupus, which is under control. Mother's testimony did not indicate any medical reason why she could not work.

On November 13, 2018, Appellees filed a petition to terminate Mother's parental rights and for stepparent adoption in the Circuit Court for Trousdale County (the "trial court"). As grounds for termination of Mother's parental rights, Appellees alleged: (1) abandonment by failure to visit; (2) abandonment by failure to support; and (3) failure to

manifest an ability and willingness to assume custody. Appellees also alleged that termination of Mother's parental rights was in the Child's best interest.

On January 15, 2019, Appellees served Mother with a request for admissions, which she failed to answer. Having not received a response to their discovery requests, Appellees moved the trial court to deem certain facts admitted. By order of March 19, 2019, the trial court granted Appellees' motions and deemed the following facts admitted:

> 1. That the minor child has lived with Petitioner/Father [] since January 1, 2015.
> 2. That [Mother] has not maintained regular visitation or other contact with the minor child since January 1, 2015.
> 3. That [Mother] and the minor child have had no contact with one another since January 1, 2017.
> 4. That [Mother] has used illegal substances which renders it unsafe for the child to be in her care and control.
> 5. That [Mother] has not maintained a relationship with the minor child in an effort to quash any questions the Petitioners may have raised as to the suitability of her parenting and the supervision of the minor child.
> 6. That [Mother] has failed to pay child support consistent with the child support guidelines for support of the minor child.
> 7. That [Mother] has recently been charged or has been incarcerated in the past for possession of illegal substances and/or alcohol.
> 8. That [Mother] resides with a convicted felon.

Mother does not appeal the trial court's order admitting the foregoing facts.

On September 23, 2019, the trial court held a hearing on the petition to terminate Mother's parental rights. Father, Stepmother, and the Child testified in person. Although Mother was present at the hearing, she did not testify. Rather, her June 21, 2019 deposition was admitted into evidence. On October 15, 2019, the trial court entered an order terminating Mother's parental rights on the grounds of: (1) persistence of conditions; (2) abandonment by failure to visit; (3) abandonment by failure to support; and (4) failure to manifest an ability and willingness to assume legal or physical custody. The trial court also found that it was "in the best interest of the minor child . . . pursuant to Tennessee Code Annotated § 36-1-113(i)," for Mother's parental rights to be terminated. Mother appeals.

## II. Issues

We restate the dispositive issues as:

1.  Whether there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on any of the statutory grounds found by the trial court.
2.  If so, whether there is clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interest protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L. Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings *de novo* and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523-24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). The Tennessee Supreme Court has explained that: The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed *de novo* with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246*; In re Carrington H.*, 483 S.W.3d at 524.

### IV. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent or guardian's parental rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d at 251 n. 14. Accordingly, we will review all of the grounds relied upon by the trial court.

### A. Persistence of the Conditions that Led to the Child's Removal

As noted above, the trial court terminated Mother's parental rights on the statutory ground of persistence of the conditions that led to Child's removal under Tennessee Code Annotated Section 36-1-113(g)(3). The statute defines persistence of conditions as follows:

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed

in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

As the first part of the statutory language makes clear, this ground only applies if the child has been "**removed from the home or the physical or legal custody of a parent** or guardian for a period of six (6) months **by a court order** entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child." Tenn. Code Ann. § 36-1-113(g)(3)(A) (emphases added). The necessary order of removal is "the threshold consideration" for this ground. *In re Alleyanna C.*, No. E2014-02343-COA-R3-PT, 2015 WL 4773313, at *14 (Tenn. Ct. App. Aug. 10, 2015). "[I]n examining whether the ground of persistence of conditions has been established, we begin by examining the order or orders that removed [the child] from [the parent]." *In re Ryder R.*, No. M2015-02461-COA-R3-PT, 2016 WL 4199567, at *6 (Tenn. Ct. App. Aug. 5, 2016). Here, there is no such order of removal.

Furthermore, in *In re Mickia J.*, this Court held that, "as a threshold requirement for applicability of the ground of persistence of conditions in termination of parental rights cases, the child . . . must also have been removed from the defendant parent's home." *In re Mickia J.*, No. E2016-00046-COA-R3-PT, 2016 WL 5210794, at *5 (Tenn. Ct. App. Sept. 19, 2016). In this case, the Child has not lived with Mother since she and Father divorced. The trial court deemed admitted the fact that, "[T]he minor child has lived with Petitioner/Father [] since January 1, 2015." So, in addition to the lack of an order of removal, the second threshold requirement for this ground, i.e., that the Child was removed "from the home or the physical or legal custody of a parent," is not met.

Moreover, Appellees did not plead this ground in their petition. A court can terminate a "parent's rights to his child based only upon the statutory ground(s) alleged in the petition because otherwise the parent would be disadvantaged in preparing a defense." *In re Anthony R.*, No. M2012-01412-COA-R3-PT, 2008 WL 2331037, at *4 (Tenn. Ct. App. Feb. 8, 2013) (quoting *In re W.B.*, M2004-00999-COA-R3-PT, 2005

WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (reversing an order terminating parental rights on grounds not alleged in the petition)). In *In re Tristyn K.*, this Court held:

> Father's complaint did not allege the presence of "persistent conditions" as one of the grounds to terminate Mother's parental rights. A trial court cannot terminate parental rights based on a ground that is not alleged in the complaint. *See M.D. v. R.L.H.*, No. E2005-00324-COA-R3-PT, 2005 WL 3115874, at *3 (Tenn. Ct. App. Nov.22, 2005) ("The record contains nothing showing that the petition ever was amended to allege any additional ground upon which to terminate Father's parental rights. Absent evidence showing that Father was properly apprised that these additional grounds for terminating his parental rights were at issue, we must vacate the Juvenile Court's judgment insofar as it terminates Father's parental rights pursuant to Tenn.Code Ann. §§ 36-1-113(g)(1) and (g)(4)"). *Accord*, *In re: W.B. IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618 (Tenn. Ct. App. Apr.29, 2005)[.]

*In re Tristyn K.*, No. E2010-00109-COA-R3-PT, 2010 WL 2867179, at *5 (Tenn. Ct. App. 2010). The same is true here. As in *Tristyn K.*, Appellees failed to plead the ground of persistence of conditions, and there is nothing to indicate that the ground was tried by consent of the parties. *In re A.V.N.*, No. E2020-00161-COA-R3-PT, 2020 WL 5496678, at *8 (Tenn. Ct. App. Sep. 10, 2020) (citation omitted) ("Unless a ground is tried by implied consent, if the ground is not properly pled, it cannot be considered as a potential ground for termination of parental rights."); *In re Justine J.*, No. E2019-00306-COA-R3-PT, 2019 WL 5079354, at *7 (Tenn. Ct. App. Oct. 10, 2019) (citing *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995) ("[W]hen evidence is introduced at a trial on a relevant issue, it cannot be relied upon to show consent to try an issue that was not pleaded."). Due to the foregoing substantive and procedural shortfalls, we reverse the trial court's termination of Mother's parental rights on the ground of persistence of the conditions that led to the Child's removal. We now turn to the remaining grounds.

### B. Abandonment

The trial court found, by clear and convincing evidence, that Mother abandoned the Child by failure to visit and failure to support. We begin our analysis with a discussion of the ground of abandonment generally. In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or

omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1).  Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
(i) For a period of four (4) consecutive months immediately preceding the filing of a ... petition to terminate the parental rights of the parent or parents ... of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents ... either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child;

\*\*\*

(D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period;

(E) For purposes of this subdivision (1), "failed to visit" means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation. That the parent had only the means or ability to make very occasional visits is not a defense to failure to visit if no visits were made during the relevant four-month period;

Tenn. Code Ann. §§ 36-1-102(1)(A)(i), (1)(D), (1)(E).

Prior to 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit or failure to support was "willful." However, in 2018, the General Assembly amended the statute to shift the burden of proof to the parent or guardian to show that his or her failure to support or visit was not willful.  For cases filed on or after July 1, 2018, Tennessee Code Annotated section 36-1-102(1)(I) now provides that:

For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure. . . .

Tenn. Code Ann. § 36-1-102(1)(I). Here, Appellees filed their petition on November 18, 2018; accordingly, Mother had the burden to prove, by a preponderance of the evidence, that her failure to visit or support the Child was not willful.

Concerning willfulness in the context of abandonment for termination of parental rights purposes, this Court has stated:

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvert. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment . . . is a question of law." *In re Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re A.M.H.*, 215 S.W.3d at 810). As previously discussed, this Court reviews questions of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523-24. We review questions of law *de novo* with no presumption of correctness. *In re Angela E.*, 402 S.W.3d at 640 (citing *In re A.M.H.*, 215 S.W.3d at 810). With the foregoing in mind, we turn to address whether Mother abandoned the Child.

Concerning this ground, the trial court made the following findings:

11. That Petitioners proved by clear and convincing evidence that the Mother [] has abandoned the child by failure to visit as outlined in Tennessee Code Annotated § 36-1-113(g)(1) and Tennessee Code Annotated § 36-1-102(1)[(A)(i)] in that [Mother] did not attempt to visit, to call, or to message with the Petitioners regarding the welfare of minor child or to request visits with the minor child since 2015, and in the four (4) months preceding the filing of the termination of parental rights petition, or without good cause, to pay child support, which is a legal and moral obligation, yet the Mother chose to pay nothing towards the financial support of her son. That [Mother] failed to . . . visit or contact [the] minor child. . ., [] and she did not request any child visitation through her own admission after she and [Father]'s relationship terminated, although she was awarded joint custody through the divorce decree.

13. That Petitioners proved by clear and convincing evidence that the ground of failure to pay child support as detailed in Tennessee Code Annotated § 36-1-113(g)[(1)] exists as to Mother [] as by her own testimony, she has never paid any child support despite an ability to do so since 2015. The Court found in the testimony and evidence as a whole that Mother had an ability to pay child support and that she willfully failed to do so.

As noted above, the trial court deemed admitted the facts that: (1) "[Mother] has not maintained regular visitation or other contact with the minor child since January 1, 2015;" (2) "[Mother] and the minor child have had no contact with one another since January 1, 2017;" and (3) "[Mother] has failed to pay child support consistent with the child support guidelines for support of the minor child." These facts support the trial court's findings, *supra*. Notwithstanding the admitted facts, the evidence adduced at the hearing provides further support for the trial court's findings.

The Child testified that Mother has not attempted to contact him since late 2015, around the time Father and Stepmother married. Stepmother corroborated the Child's testimony, stating that, since 2015, Mother has visited the Child four times under supervision and has seen him in public places by happenstance. Although it is undisputed that Mother has Father's contact information, she has not contacted the Child since January 1, 2017 and has paid no signification support for the Child since her divorce from Father. Although it is clear from the record that Mother has made no more than token attempts at visitation and support since 2015, the question is whether she met her burden to show that such failure was not willful.

- 10 -

Mother contends that her efforts to visit and support were thwarted by Appellees. The record, however, does not support her contention. In the first instance, there is no indication or evidence that Mother is unable to earn an income, and there is no evidence that she is unable to visit the Child. Father testified that he and Stepmother were not trying to hide Child from Mother and gave Child the option to speak with Mother when she reached out. The Child corroborated Father's testimony, stating that neither appellee had prevented him from speaking with Mother. When asked, during her deposition, about her attempts at contact with the Child, Mother stated that she has not attempted to send mail because she thinks it will not reach the Child due to Appellees' intervention. There is no proof of this, however. The record shows that Mother has occasionally attempted to make contact with the Child through family members and messages on social media, but these attempts were sporadic and inconsistent. Perhaps most telling is Mother's own testimony. When asked how much time she had spent with the Child in the past two years, Mother candidly stated, "None." Mother has not met her burden to show that her failure to visit in the four months preceding the filing of Appellees' petition was not willful.

Turning to the question of support, Father testified that, since their divorce, Mother has paid a "couple hundred" dollars toward the Child's support. Mother admitted that she has never paid consistent child support. The Child testified that, in the four years preceding the hearing, Mother had not given him any Christmas or birthday gifts. Although Mother claimed that she bought some clothing for the Child, such purchases would, at best, constitute mere token support. Concerning the question of willfulness, the evidence shows that, although Mother's employment has been sporadic, in the four months preceding the filing of the petition, she was employed by an auto parts manufacturing company. Despite the fact that she was earning income, there is no indication that Mother made any payment toward the Child's support during the relevant four-month period. In short, Mother has failed to meet her burden to show that her failure to pay support was not willful.

For the foregoing reasons, we conclude that there is sufficient evidence to support the trial court's findings that Mother abandoned the Child by failing to visit and support during the relevant four-month period, and Mother has failed to meet her burden to show that her failure to do so was not willful. Accordingly, we affirm the termination of Mother's parental rights on the grounds of abandonment by failure to support and abandonment by failure to visit.

### C. Failure to Manifest an Ability and Willingness to Custody

Tennessee Code Annotated section 36-1-113(g)(14) provides a ground for termination of parental rights when

[a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14).

This ground for termination of parental rights requires the movant to establish two elements by clear and convincing evidence. *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018) (citation omitted). Concerning the first element, Appellees have the burden to prove that Mother failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child. Tenn. Code Ann. § 36-1-113(g)(14). The Tennessee Supreme Court has adopted the interpretation of section 36-1-113(g)(14) set out in *In re Amynn K.*. No. E2017-11866-COA-R3-PT, 2018 WL 3058280 (Tenn. Ct. App. June 20, 2018); *see In re Neveah M.*, No. M2019-00313-SC-R11-PT, 2020 WL 7258044, at *14 (Tenn. Dec. 10, 2020) (citing *In re Amynn K.*, 2018 WL 3058280, at *14). The interpretation adopted by our Supreme Court

> places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal custody or financial responsibility for the child. If a parent seeking to terminate parental rights proves by clear and convincing evidence that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*In re Naveah*, 2020 WL 7258044, at *14. If the first element is met, then Appellees must show that placing the Child in Mother's custody poses "a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14). In this case, the trial court held that Appellees met their burden of proof as to both of these elements, to-wit:

> That Petitioners proved by clear and convincing evidence that Mother, [Mother], failed to manifest a willingness to assume custody of child pursuant to Tennessee Code Annotated § 36-1-113(g)[(14)]. The Court finds evidence of Mother having means, homes and jobs but that the evidence which was entered into evidence, the substance abuse, drug transactions, illegal activity, living with a known drug dealer and habitual criminal, prevented her from manifesting a willingness to assume custody, and could not keep up with visitations which were only eight-hour day visits at the visitation, which was apparently court ordered and supervised.

The admitted facts that: (1) "[Mother] has used illegal substances which renders it unsafe for the child to be in her care and control;" and (2) "[Mother] has recently been charged or has been incarcerated in the past for possession of illegal substances and/or alcohol" support the trial court's findings. Furthermore, the record is replete with evidence of Mother's extensive history of drug abuse and criminal activity. In her deposition, she candidly stated, "I've been arrested a bunch of times . . . ." At the time of her deposition, Mother testified that she was on probation for criminal charges related to her illegal drug use. When asked whether she had sought help for her addiction, Mother denied any attempt at treatment. Mother argues that the trial court's findings were based on her actions from "the past" and are, thus, insufficient to support this ground. Mother's testimony belies her argument. Mother admitted to using methamphetamine as late as October 2018, which was approximately one month before Appellees filed their petition to terminate her parental rights. By her own admission, Mother's sobriety is not proven.

In addition, Mother testified that she is married to a man who molested her daughters (the Child's half-siblings). Mother claimed that she was "legal separated" from this man, but they are not divorced. Furthermore, Mother admitted to having a recent relationship, i.e., until at least February 2019, with a man, who she admitted had a "pretty extensive criminal record."

The foregoing facts provide clear and convincing proof that Mother, through her continued drug use and choice of relationships, has failed to manifest a willingness to assume custody of the Child. These facts also support the second element of this ground in that placing the Child in Mother's custody would pose "a risk of substantial harm to [his] physical or psychological welfare." Tenn. Code Ann. § 36-1-113(g)(14). For these reasons, we affirm the trial court's termination of Mother's parental rights on this ground.

## V. Best Interest

As noted above, in addition to proving at least one ground for termination, a party seeking to terminate a parent's rights must also prove by clear and convincing evidence that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of parent or guardian;

***

- 13 -

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

***

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of the child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Depending on the circumstances of an individual case, the consideration of a single factor, or other factors outside the enumerate statutory factors, may dictate the outcome of the best interest analysis. *See In re Audrey S.*, 182 S.W.3d at 877. This Court has explained that:

Ascertaining a child's best interests . . . does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 1994).

- 14 -

Furthermore, the Tennessee Supreme Court has instructed that:

Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *In re Kaliyah S.*, 455 S.W.3d at 555. When considering [the] statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id.* "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d)(2017). *In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

Concerning the Child's best interest, the trial court considered the foregoing statutory factors and found:

(a) The Mother has not made an adjustment because of her past [addiction] to drugs or her illegal acts, the people she lived with who [have] criminal records, used drugs and the current husband has sexually molested both of her daughters. Therefore, the circumstance, conduct, or conditions of the Mother to make it unsafe and not in the child's best interest to be in the home of the Mother.

(b) There was no testimony that the Mother has made any adjustment of circumstances to make it safe for the child to return to her care and that it would not be in the child's best interest.

(c) There has been no change in the Mother's behavior as she may still be living with a drug dealer.

(d) The Court finds in the testimony and evidence presented that Petitioners have shown by clear and convincing evidence the Mother has not maintained regular visitation or other contact with the child.

(e) The Court did find that the Petitioners have a meaningful relationship with minor child that has been established through loving and appropriate bonds as the Petitioners [have] been the custodians and acted as the Mother

- 15 -

and Father of minor child for a significant period of time, which is the majority of the child's life. The Court further finds there is no significant relationship between the Mother and minor child.

(f) The Court finds that a change of caretakers and physical environment is likely to have an adverse effect on the child's emotional, physical, psychological and mental conditions. Testimony heard by the Court is that it would not be in the best interest of the child and bad for the minor child.

(g) The Court finds that the physical environment of the Mother's home is not healthy and not safe, that there is criminal activity in the home and drug use/sales which would prevent the Mother from consistently being able to care for a child in a safe and stable manner.

(h) The Court finds that Mother's mental and/or emotional status detrimental to the child which prevents her from effectively providing safe and stable care and supervision for the child. The Court finds the Mother cannot provide a safe and stable home for the child.

For the many reasons discussed above, the record supports the trial court's finding that termination of Mother's parental rights is in the Child's best interest. Mother's transient lifestyle, failing to adhere to the visitation schedule, and her criminal record indicate that she has failed to make necessary adjustments to her circumstances, conduct, and conditions so as to make it safe and in the Child's best interest to be in her home. This is especially so in view of Mother's association and relationships with criminals and her failure to seek any treatment for her own drug addiction.

Mother has willfully failed to provide more than token support for the Child. She has not maintained consistent visitation, and, as such, there is no meaningful relationship between Mother and the Child. The Child testified that he considers his Stepmother to be his mother, and stated definitively, "I don't want to go with [Mother]. I don't want to be with her." Based on Mother's current living conditions, it would likely be detrimental the Child's emotional and psychological health to leave the stability he enjoys in Appellees' home to spend any time with Mother. For these reasons, we conclude that the evidence preponderates in favor of the trial court's findings concerning the statutory best interest factors and that these findings, cumulatively, provide clear and convincing proof that termination of Mother's parental rights is in the Child's best interest.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Mother's parental rights on the ground of persistence of the conditions that led to the Child's removal. We affirm the termination of her parental rights on all other grounds relied

upon by the trial court and on its finding that termination of Mother's parental rights is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant, Rachel C. Because Rachel C. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

__s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE